[Civ. No. 49970. First Dist., Div. Two. Aug. 26, 1982.]

FRANK SEGHESIO et al., Plaintiffs and Appellants, v.
COUNTY OF NAPA et al., Defendants and Appellants.

COUNSEL

Richard B. Maxwell and Maxwell, Allen & Cooper for Plaintiffs and Appellants.

Stephen W. Hackett, County Counsel, and R. Clifford Lober, Chief Deputy County Counsel, for Defendants and Appellants.

OPINION

ROUSE, Acting P. J.—Plaintiffs, Frank and Elvera Seghesio and Thomas and Dorothy Nelson, brought this mandamus action against the County of Napa, the board of supervisors of that county and James Hickey, in his capacity as Director of Conservation—Development and Planning Department of the County of Napa.

By such action, plaintiffs sought to compel defendants to withdraw an environmental impact report (EIR) requirement in connection with plaintiffs' application for a timber harvest permit. Plaintiffs also sought an award of attorney's fees under section 800 of the Government Code, based upon their allegation that defendants had acted arbitrarily and capriciously in continuing to insist upon an EIR.

In their verified petition, plaintiffs alleged they were exempt from the requirement that an EIR be prepared because, on January 6, 1976, the Secretary for Resources of the State of California certified that the regulation of timber operations on private lands in this state by the California Department of Forestry and Board of Forestry met the criteria contained in section 21080.5 of the Public Resources Code.[1] Plaintiffs alleged that, on March 30, 1979, they filed an application for a timber harvesting plan, covering timber located on their property with the state Department of Forestry, and that on May 30, 1979, the state Director of Forestry approved and certified their plan. They later filed a similar application for a timber harvesting permit with defendant County of Napa, but were advised on October 4, 1979, that an EIR would be required. Plaintiffs then told defendants that due to their exempt status under section 21080.5, defendants had no authority to require an EIR. When defendants refused to withdraw the EIR requirement, plaintiffs appealed to defendant Napa County Board of Supervisors, which upheld the EIR requirement.

Following the issuance of an alternative writ of mandate, defendants answered, continuing to insist upon their right to require the preparation of an EIR in connection with plaintiffs' application for a timber harvest permit.

The matter was argued on January 17, 1980, and on March 14, 1980, judgment was entered granting plaintiffs a peremptory writ of mandate compelling defendants to withdraw the EIR requirement in connection with plaintiffs' application for a timber harvest permit. Defendants filed a timely notice of appeal from the judgment. Plaintiffs also appealed from the judgment insofar as it failed to include findings that defendants had acted arbitrarily and capriciously and that plaintiffs were therefore entitled to an award of attorney's fees.

The question now before us is whether, by virtue of plaintiffs' compliance with section 21080.5, defendants were without authority to

[1]Unless otherwise specified, all statutory references herein are to the Public Resources Code.

require the preparation of an EIR in connection with plaintiffs' application for a timber harvest permit.

Prior to its amendment in 1978, section 21080.5 provided, in pertinent part, as follows: "(a) When the regulatory program of a state agency, board, or commission requires a plan or other written documentation, containing environmental information and complying with the requirements of paragraph (3) of subdivision (d) of this section, to be submitted in support of any of the activities listed in subdivision (b), such plan or other written documentation may be submitted in lieu of the environmental impact report required by this division; provided that the Secretary of the Resources Agency has certified the regulatory program pursuant to this section. . . .

"(c) A regulatory program certified pursuant to this section is exempt from the provisions of Chapter 3 (commencing with section 21100) of this division." (Stats. 1977, ch. 1200, § 6.5, p. 3999.)

Chapter 3 of division 13 of the Public Resources Code is that portion of the California Environmental Quality Act (CEQA) which is entitled "State Agencies, Boards and Commissions" and which obligates those bodies to require that an EIR be prepared on any project which may have a significant effect on the environment.

In 1978, subdivision (c) of section 21080.5 was amended to add the following italicized language: "A regulatory program certified pursuant to this section is exempt from the provisions of Chapter 3 (commencing with Section 21100) *and Chapter 4 (commencing with Section 21150) of this division and Section 21167.*" (Stats. 1978, ch. 308, § 6, p. 645.) (Italics added.)

Chapter 4 of division 13 is entitled "Local Agencies" and imposes the EIR requirement upon such bodies. Section 21167 prescribes the time limits for challenging actions by public agencies which are claimed to be violative of CEQA.

In construing section 21080.5 in its pre-1978 form, appellate court decisions have held that the statute created an exemption from the EIR requirement of CEQA in a situation where a particular state agency, board or commission was already imposing requirements which were the functional equivalent of an EIR. In *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196 [132 Cal.Rptr. 377, 553 P.2d 537], the Cali-

fornia Supreme Court held that the enactment of section 21080.5 "creates an alternative to the EIR requirement for qualified state agencies having important environmental protection responsibilities. Agencies may satisfy their EIR obligation under this section by adopting and adhering to a regulatory program determined by the Secretary of the Resources Agency . . . ."

Similarly, in *City of Coronado* v. *California Coastal Zone Conservation Com.* (1977) 69 Cal.App.3d 570, 581 [138 Cal.Rptr. 241], the court stated that section 21080.5 "authorizes environmentally oriented agencies to be exempt from the requirement of filing the full-scale EIR only if they submit an abbreviated environmental review complying with [section 21080.5]. This exemption from the requirement of a full-scale EIR is available to the agency 'provided that the Secretary of the Resources Agency . . . has certified the regulatory program pursuant to this section.' [Citation.]"

As previously noted, in January 1976 the Secretary for Resources certified that timber operations on private lands in this state were exempt, under section 21080.5, from the EIR requirement.[2]

Defendants point out that, since 1972, under the state Forest Practice Act (Stats. 1971, ch. 1090, § 1, pp. 2068-2069) and its successor, the Z'Berg-Nejedly Forest Practice Act of 1973 (§ 4511 et seq.), Napa County has been authorized to impose upon forest practices rules and regulations which are stricter than those imposed by state requirements. (§ 4516.) In 1973, Napa County enacted its own forest practice rules, which require an EIR where one would be required under CEQA. Defendants also point out that CEQA requires all local agencies to cause an EIR to be prepared before approving any project which may have a significant effect on the environment and that the harvesting of timber has been held to be a project to which CEQA applies. (*Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App. 3d 959, 970 [131 Cal.Rptr. 172].)

It is defendants' position that section 21080.5 was intended to grant an exemption only from the EIR requirements imposed by *state* agen-

---

[2]The document states, in pertinent part, "I hereby certify that the regulation of timber operations on private lands in California by the California Division of Forestry and the Board of Forestry meets the criteria contained in Public Resources Code Section 21080.5 and accordingly is exempt from the requirement for preparing environmental impact reports under Chapter 3 (commencing with Section 21100 of Division 13 of the Public Resources Code)."

cies, boards and commissions, but not from the EIR requirements imposed by *local* agencies, boards and commissions.

In support of their position, defendants first note that, even after the 1978 amendment to section 21080.5, subdivision (a) of that statute still provided for exemption from CEQA's EIR requirement only where the Secretary for Resources has certified that "'the regulatory program of a *state* agency, board, or commission'" requires a plan or other written documents complying with section 21080.5. (Italics supplied.) They also point out that when the Secretary for Resources certified as exempt from EIR requirements the regulation of timber operations on private lands in California, such certification expressly stated that it applied only to the EIR requirements imposed by state agencies or other bodies.

Both of these arguments are based upon the same misconception. Subdivision (a) of section 21080.5 sets forth the certification requirements which will create an exemption from CEQA and subdivision (c) of that statute delineates the scope of that exemption. Prior to the 1978 amendment, subdivision (c) created an exemption only from the EIR requirements which *state* agencies were obligated by CEQA to impose. The 1978 amendment expanded that exemption to apply to the EIR requirements which *local* agencies were obligated to impose. There can be no other explanation for the language of the amendment and its express reference to those portions of CEQA which impose upon local bodies the obligation to require EIRs. Defendants are correct in asserting that subdivision (a) of the statute conditions the granting of an exemption from the EIR requirement upon certification establishing that a *state* regulatory program requires the functional equivalent of an EIR. However, it is clear from a reading of subdivision (c) that once the requirements of subdivision (a) are met, the project is exempt from the EIR requirements of both state *and* local agencies.

Defendants' related argument, **based** upon the wording of the certification by the Secretary for Resources, brings the basic defect underlying their position into even clearer focus. As we have previously noted, the document in question stated that certification was based upon the fact that the regulation of timber operations on private lands in this state "by the California Division of Forestry and the Board of Forestry meets the criteria contained in ... Section 21080.5 and accordingly is exempt from the requirement for preparing environmental impact reports under Chapter 3 ...." The criteria specified in subdivision (a) of section 21080.5 have remained the same at all pertinent times, and

plaintiffs have clearly complied with that criteria by obtaining approval and certification of their timber harvest plan by the *state* Division of Forestry. Having obtained such certification in 1979, long after the effective date of the 1978 amendment to subdivision (c) of section 21080.5, plaintiffs thereby became exempt from the EIR requirements of both state and local agencies.

Short shrift may be given to defendants' additional argument that "the cases demonstrate that ... section 21080.5 was intended to apply to the regulatory programs of state agencies and *only* state agencies." It suffices to state that each of the cases relied upon interpreted the statute in its pre-1978 form when it did not apply to local agencies.

Finally, we turn to plaintiffs' appeal from that portion of the judgment which declined to find that defendants had acted arbitrarily and capriciously, thus rendering themselves liable, under section 800 of the Government Code, for plaintiffs' attorney's fees. Plaintiffs concede that an award of attorney's fees under section 800 of the Government Code must be based upon a finding that a public entity or an officer thereof engaged in "'conduct not supported by a fair or substantial reason,'" or "'unsubstantiated determinations.'" (*Reeves* v. *City of Burbank* (1979) 94 Cal.App.3d 770, 776 [156 Cal.Rptr. 667].) In this instance, the trial court explained its decision not to award attorney's fees as follows: "I thought it was an honest legal dispute. I didn't have any trouble deciding it, based on [counsel for plaintiffs'] persuasiveness, nonetheless, I think County Counsel's position was a reasonable one, not arbitrary. There was an honest legal dispute about it. So I am not going to award the attorney's fees."

We agree with the trial court that while defendants' interpretation of section 21080.5 is one in which we cannot concur, defendants' conduct in adhering to their interpretation of that statute cannot be deemed arbitrary or capricious.

The judgment is affirmed.

Miller, J., and Smith, J., concurred.